UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                     :

CALVARY HOSPITAL, INC.,               :
                                       :

                      Plaintiff,     :               1:23-cv-8479-GHW
                                         :

                    -against-         :    <u>MEMORANDUM OPINION &</u>
                                         :              <u>ORDER</u>
ROBERT F. KENNEDY, JR., *in his official capacity as* :
*Secretary, United States Department of Health and Human* :
*Services*,                                        :
                                         :
                     Defendant.    :
                                         :
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/25/25

GREGORY H. WOODS, District Judge:

       Plaintiff Calvary Hospital, Inc. is a healthcare provider that provides healthcare services to Medicare-eligible patients.  It has appealed to this Court from a determination by the Secretary of the United States Department of Health and Human Services ("HHS") that Plaintiff overcharged the Medicare program by approximately $2.7 million for services provided to its patients.  The Secretary arrived at this amount by extrapolating from a sample of Plaintiff's Medicare claims that did not include claims where a patient paid zero dollars—what Plaintiff refers to as "zero-paid claims."  Plaintiff alleges that the Secretary violated its constitutional right to due process when he excluded zero-paid claims from the sample that he used to calculate Plaintiff's overcharges.

       An administrative law judge ("ALJ") issued the Secretary's final determination regarding Plaintiff's overcharges after holding a formal hearing according to the procedures set out in 42 U.S.C. § 405(g) ("Section 405(g)").  When Plaintiff appealed the decision to this Court, the Secretary filed, pursuant to Section 405(g), a certified copy of the record arising from that hearing.  The certified record does not include certain materials related to the Secretary's exclusion of zero-paid claims that were not presented in the hearing before the ALJ.  Plaintiff moved before the Honorable

Magistrate Judge Henry J. Ricardo to add those materials to the administrative record. Judge Ricardo denied the motion, and Plaintiff's objections to Judge Ricardo's order are now before the Court.

The Court has reviewed Judge Ricardo's order for clear error and found none. Plaintiff has styled its motion to add the materials as one to "complete" the administrative record with materials that are required to be a part of the record on appeal from the Secretary's decision. To succeed on a motion to complete the administrative record, a movant must overcome the presumption of regularity that attaches to an agency's actions, including its certification of the record. Instead of attempting to rebut that presumption, Plaintiff has invoked the authority courts have to *supplement* the administrative record with extra-record evidence that is necessary for the court to evaluate a party's statutory or constitutional challenges to an agency determination. Motions to supplement the administrative record are distinct from motions to complete the record, and are generally subject to a more rigorous standard. Because Plaintiff has failed to demonstrate that the administrative record is incomplete, and because Plaintiff has failed to demonstrate that supplementation of the record is necessary for the Court to evaluate its constitutional challenges to the Secretary's determination, Plaintiff's objections to Judge Ricardo's order are OVERRULED.

## I. BACKGROUND

Familiarity with this case is presumed. The reader is referred to Judge Ricardo's order denying Plaintiff's motion to compel for a comprehensive description of the facts and procedural history relevant to Plaintiff's motion. Dkt. No. 48 (the "Order"). Plaintiff Calvary Hospital, Inc. ("Calvary" or "Plaintiff") is a healthcare provider. Dkt. No. 11 ¶¶ 1–3 ("Complaint"). Plaintiff is enrolled in the Medicare program administered by the Centers for Medicare & Medicaid Services ("CMS"), an agency of the United States Department of Health and Human Services ("HHS"). *Id.* ¶¶ 4–6. Defendant Robert F. Kennedy, Jr. is sued in his official capacity as Secretary of HHS (the

"Secretary").  *Id.* ¶ 5.[1]

### A. The Medicare Program

The Medicare program reimburses eligible providers, including Calvary, for healthcare services that they provide to Medicare beneficiaries.  *See* Order at 2; *Est. of Landers v. Leavitt*, 545 F.3d 98, 103 (2d Cir. 2008), *as revised* (Jan. 15, 2009) (describing relevant Medicare program); *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 73 (2d Cir. 2006) (same).  Because the Medicare program receives too many claims to review one by one, it operates on an "honor system."  *United States v. Moss*, 34 F.4th 1176, 1181 (11th Cir. 2022).  CMS pays healthcare providers reimbursement funds upfront, *id.*, and "relies on [the] providers to submit only legitimate and properly documented claims" that draw from those funds, *United States v. Bergman*, 852 F.3d 1046, 1054 (11th Cir. 2017).  To ensure the integrity of the program, Medicare reserves the right to audit a provider's claims to "identify instances of overpayment."  *Dominion Ambulance, L.L.C. v. Azar*, 968 F.3d 429, 431 (5th Cir. 2020).

CMS often delegates its post-payment audits of providers to private contractors called Unified Program Integrity Contractors ("UPICs").  Complaint ¶ 57.  UPICs typically review a random sample of the provider's Medicare claims over a given period and calculate an "error rate" representing the percentage of claims in the sample that were improperly paid.  Order at 3 (citing 42 U.S.C. § 1395ddd(f)(8)).  If the error rate exceeds a threshold determined by the Secretary, "the UPIC extrapolates that error rate across the provider's other Medicare claims to determine the size of [the provider's] overpayment."  *Id.* (citing 42 U.S.C. § 1395ddd(f)(3)).

### B. The Medicare Administrative Appeal Process

If a UPIC determines that a provider has overcharged the Medicare program, there are four

---

[1] Because Plaintiff commenced this action in 2023, Plaintiff's complaint names the former Secretary of HHS, Xavier Becerra, as the defendant in this case.  Pursuant to Fed. R. Civ. P. 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending." Instead, "[t]he officer's successor"—in this case Secretary Kennedy—"is automatically substituted as a party."  Fed. R. Civ. P. 25(d).  "Later proceedings should be in the substituted party's name."  *Id.*

levels of administrative appeals that the provider may invoke. *See* Complaint ¶ 117; *see generally* Order at 3–4. First, the provider may seek a "redetermination" of the UPIC's findings by a third-party Medicare Adminsitrative Contractor ("MAC"). 42 U.S.C. § 1395ff(a)(3). Second, if the result of the redetermination is unfavorable, the provider may seek "reconsideration" of the UPIC's findings by a Qualified Independent Contractor ("QIC"). 42 U.S.C. § 1395ff(c).

Third, if the QIC's decision remains unfavorable and the amount in controversy in the dispute exceeds $100, a provider can request a "hearing on a decision of a [QIC]" before an administrative law judge ("ALJ"). 42 U.S.C. § 1395ff(d)(1); 42 U.S.C. § 1395ff(b)(1)(E). "The appellant may submit new evidence after the QIC reconsideration but before the hearing, and if there is good cause for submitting the evidence for the first time at this step of the appeals process, the ALJ may consider it." *Integrity Soc. Work Servs., LCSW, LLC. v. Azar*, No. 20-cv-02770 (PK), 2021 WL 4502620, at *4 (E.D.N.Y. Oct. 1, 2021), *aff'd sub nom. Integrity Soc. Work Servs., LCSW, LLC v. Becerra*, No. 21-2757-cv, 2022 WL 1930866 (2d Cir. June 6, 2022) (citing 42 C.F.R. § 405.1028(a)(1)). The ALJ "conducts a de novo review and issues a decision based on the administrative record, including . . . any hearing record." 42 C.F.R. § 405.1000(d).

Fourth, if the provider remains dissatisfied with the ALJ's decision, it may request a review by the Medicare Appeals Council (the "Council"). *See* 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 405.1100. The Council "review[s] the ALJ's . . . decision de novo," but "[t]he party requesting review does not have a right to hearing before the Council." 42 C.F.R. § 405.1108(a). "The Council has 90 days to issue a decision, which becomes the final decision of the Secretary." Order at 4 (citing 42 U.S.C. § 1395ff(d)(2)(A)). "If the Council does not issue a decision within this 90-day period, the provider can file suit to obtain judicial review, in which case the ALJ decision becomes the Secretary's final decision." *Id.* (citing 42 U.S.C. § 1395ff(d)(3)(B); 42 U.S.C. § 1395ff(b)(1)(A)).

4

## C.  Plaintiff's Administrative Appeals

In 2019, a UPIC audited Plaintiff's Medicare claims.  Complaint ¶¶ 198–200.  On March 27, 2020, the UPIC determined that Plaintiff had claimed $4,084,289.26 more in Medicare payments than it should have.  *Id.* ¶ 201.  The UPIC extrapolated that amount from a random sample taken from a "universe" of Plaintiff's Medicare claims that intentionally excluded any claims which resulted in a bill of zero dollars.  *Id.* ¶¶ 203–05.  Plaintiff refers to claims that resulted in a bill of zero dollars as "zero-paid claims."  *Id.* ¶ 167.

Plaintiff requested a redetermination of the UPIC's findings.  *Id.* ¶ 212.  On June 18, 2020, the MAC upheld the UPIC's determination in full.  *Id.* ¶ 215.  Plaintiff then requested a reconsideration before a QIC.  *Id.* ¶ 223.  On April 16, 2021, the QIC issued a decision that upheld the UPIC's sampling methodology, but ruled in Plaintiff's favor on certain individual claims.  *Id.* ¶ 224.  The QIC's determination resulted in a revised overpayment assessment against Plaintiff of $2,719,225.59.  *Id.* ¶ 225.

Plaintiff then requested a hearing on the QIC's determination before an ALJ.  *Id.* ¶ 227.  In the hearing, Plaintiff argued that the UPIC's sampling calculations were flawed because it improperly excluded zero-paid claims from the universe from which it drew a sample.  *Id.* ¶ 240.  Plaintiff also argued that the UPIC had improperly withheld materials setting forth the larger collection of claims from which it constructed the universe of claims by extracting zero-paid claims.  *Id.*  On March 20, 2023, the ALJ issued a decision upholding the revised overpayment assessment against Plaintiff and rejecting each of Plaintiff's arguments.  *Id.* ¶ 242; *see* Complaint, Ex. 1 at 9–10 (ALJ decision) (considering and rejecting Plaintiff's arguments regarding the composition of the "universe" and the validity of the sample).

Plaintiff requested a review of the ALJ's decision before the Medicare Appeals Council, but the Council failed to issue a decision within 90 days.  *Id.* ¶¶ 245–46.  Plaintiff appealed the ALJ's

decision to this Court on September 26, 2023.  Dkt. No. 1.  On June 14, 2024, the ALJ filed a

certified copy of the administrative record with the Court.  Dkt. Nos. 30, 31; *see* 42 U.S.C.

§ 1395ff(b)(1)(A); 42 U.S.C. § 405(g) (providing that, on judicial review of a Medicare determination,

the Secretary "shall file a certified copy of the transcript of the record including the evidence upon

which the findings and decision complained of are based").

### D.  Plaintiff's Motion to Compel "Completion" of the Administrative Record

On August 26, 2024, Plaintiff filed a motion to compel the addition of eight documents to

the administrative record certified by the Secretary to this Court.  *See generally* Order at 6–12.  The

first document Plaintiff seeks to add is a report containing the broader collection of Plaintiff's

Medicare claims that the UPIC whittled down to create the "universe" of claims from which it drew

a sample to calculate Plaintiff's overpayments.  *Id.* at 7.  This broader collection of claims contained

the zero-paid claims that the UPIC excluded before drawing a sample.  *Id.*  The second and third

documents Plaintiff seeks to add are "worksheets" in the UPIC's possession that explain its

methodology in taking a sample from the "universe" of Plaintiff's claims and extrapolating from that

sample.  *Id.* at 8–9.  The fourth, fifth, and sixth documents Plaintiff seeks to add are letters that the

MAC and UPIC allegedly sent to Plaintiff in the course of the appeals process.  *Id.* at 9–11.  The

seventh and eighth documents are statistical files that the UPIC allegedly used in assessing Plaintiff's

overpayments.  *Id.* at 11–12.

The Order found, and Plaintiff does not dispute, that none of the eight documents Plaintiff

seeks to add to the administrative record featured in the hearing before the ALJ on Plaintiff's

overpayment assessments.  *Id.* at 12; *see* Dkt. No. 51 at 2 ("Objections").

### E.  Procedural History

This action is referred to Judge Ricardo for general pretrial matters and dispositive motions.

Dkt. No. 6.  Plaintiff filed its motion to compel "completion" of the administrative record before

Judge Ricardo on August 26, 2024.  Dkt. No. 36.  Judge Ricardo issued an order denying Plaintiff's motion to compel on January 15, 2025.  Order at 32.  Plaintiff filed objections to the Order on January 29, 2025.  Dkt. No. 51.  Defendant responded to Plaintiff's objections on February 26, 2025.  Dkt. No. 54 ("Response").

## II.    LEGAL STANDARD

Fed. R. Civ. P. 72(a) governs objections to a magistrate judge's order resolving "a pretrial matter not dispositive of [the] party's claim or defense."  Fed. R. Civ. P. 72(a).  When a party objects to a magistrate judge's ruling, the district court must consider the objection and "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  *Id.*  A magistrate judge's order is clearly erroneous where "'on the entire evidence,' [the district court] is 'left with the definite and firm conviction that a mistake has been committed.'"  *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "A magistrate's ruling is contrary to law if it 'fail[s] to apply or misapplies relevant statutes, case law, or rules of procedure.'"  *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (quoting *Moore v. Publicis Groupe*, No. 11-cv-1279 (ALC) (AJP), 2012 WL 1446534, at *1 (S.D.N.Y. Apr. 26, 2012)).

The standard of review pursuant to Rule 72(a) is "highly deferential" and "imposes a heavy burden on the objecting party."  *Molnlycke Health Care US, LLC v. Greenwood Mktg., LLC*, No. 22-cv-3719 (CS) (JCM), 2024 WL 2048644, at *1 (S.D.N.Y. May 7, 2024) (quotations omitted).  "[M]agistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused."  *Williams v. Rosenblatt Securities, Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (quoting *Thai Lao*, 924 F. Supp. 2d at 511).  "The fact that reasonable minds may differ on the wisdom of granting [a party's] motion is not sufficient to overturn a magistrate judge's decision."  *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, No. 04-cv-3531

(LTS) (SLC), 2023 WL 8112804, at *1 (S.D.N.Y. Nov. 21, 2023) (quotation omitted).

### III.    DISCUSSION

The Court has reviewed Judge Ricardo's Order for clear error or misapplication of law and found none. Plaintiff's objections conflate, among other things, the law governing a district court's power to "complete" an administrative record before the court that is incomplete because it does not contain the full record considered by the Secretary, *see Leavitt*, 545 F.3d at 113; *see also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977) (remanding to district court for review of agency decision "based on the full administrative record that was before the Secretary at the time he made his decision"), and the separate and distinct area of law governing a district court's power to "supplement" an already complete administrative record where supplementation is "necessary" to "resolve any statutory or constitutional contention that the agency did not, or cannot, decide," *Leavitt*, 545 F.3d at 113 (quoting *Shalala v. Ill. Council on Long Term Care, Inc.,* 529 U.S. 1, 23–24 (2000)) (alterations omitted). Plaintiff's Objections invoke the Court's authority to supplement the administrative record as necessary to resolve its constitutional challenges to the ALJ's determination, *e.g.*, Objections at 9, but insist that Plaintiff's motion is one to complete the administrative record, *e.g., id.* at 8.

Despite how Plaintiff has styled its claims for relief, the Court's power to complete the administrative record and its power to develop an evidentiary record as necessary to evaluate a party's constitutional challenges to an administrative decision remain distinct. The Court finds no clear error or misapplication of law in the Order's determination that Plaintiff's motion to complete must be denied because it has failed to demonstrate that the record is incomplete, and finds no clear error or misapplication of law in the Order's separate determination that Plaintiff has failed to meet the stringent standard for supplementation of the administrative record. Accordingly, Plaintiff's objections to the Order are overruled.

## A.  Requests to Complete the Administrative Record Are Distinct from Requests to Supplement the Administrative Record

Plaintiff's motion to compel is styled as a motion to "complete" the administrative record. Dkt. No. 36 at 1.  However, much of the authority Plaintiff provides in support of its motion concerns motions to *supplement* the administrative record rather than complete it.  *See* Objections at 6–11, 13–16.  Motions to complete and motions to supplement are distinct methods of adding materials to the administrative record and are evaluated under different standards.  Because Plaintiff's objections conflate the standards governing motions to complete and motions to supplement, the Court will first explain the distinction between these motions and the standards under which they are evaluated.

### i.  Motions to Complete the Administrative Record

Motions to complete the administrative record argue that the administrative record before the Court does not include all of the materials that the agency decision-makers considered in making their determination.  That is, they "seek to show that materials exist that were actually considered by the agency decision-makers but are not in the record as filed."  *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012); *see Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, No. 21-cv-5706 (LJL), 2022 WL 2805464, at *2 (S.D.N.Y. July 18, 2022) (evaluating "motion to compel completion of the administrative record" with documents that were allegedly "part of the administrative record" because they were part "of its decision-making process").  Movants bear the burden of demonstrating that the administrative record certified by the agency is incomplete and requires completion.  *See Sebelius*, 890 F. Supp. 2d at 309; *accord Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019).

By their nature, motions to complete the administrative record on appeal from a hearing held pursuant to Section 405(g) must dispute the completeness of the administrative record that the Secretary certified to the district court.  *See* 42 U.S.C. § 405(g) (providing that, on appeal from a

decision by the Secretary, the Secretary "shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based"). Accordingly, motions to complete the record on a Medicare appeal must "rebut the presumption of administrative regularity" that attaches to the actions of an agency of the government. *Sebelius*, 890 F. Supp. 2d at 309; *see also U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) (observing that "a presumption of regularity attaches to the actions of Government agencies"). An agency's designation of the administrative record "serves as a formal representation by the agency that it has properly completed the record," *Ctr. for Biological Diversity*, 2022 WL 2805464, at *3, and courts "presume that an 'agency properly designated the [a]dministrative [r]ecord absent clear evidence to the contrary,'" *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)); *accord Oceana*, 920 F.3d at 865 (observing that there must be a "substantial showing" before a court will conclude that the designated "record was incomplete" (quotation omitted)); *see also Sebelius*, 890 F. Supp. 2d at 309 ("It is . . . settled that deference is due to the agency's judgment as to what constitutes the whole administrative record.").

As a general matter, the presumption of regularity is not rebutted by a showing that the materials a party seeks to add "were somewhere within the agency." *Id.*; *accord State of New York v. Shalala*, No. 93-cv-1330 (JFK), 1996 WL 87240, at *6 (S.D.N.Y. Feb. 29, 1996) (rejecting argument that documents should be considered by district court "merely because they were within the knowledge of the agency" at the time that the agency made its decision (quotation omitted)). Implicit in the agency's certification of the record is a certification that the agency "duly evaluated all predecisional documents before excluding them from the record." *Oceana*, 920 F.3d at 865.

### ii. Motions to Supplement the Administrative Record

Motions to supplement the administrative record argue that the Court should consider extra-record evidence in addition to the record that the agency decision-makers considered. *See Nat'l*

*Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997). Unlike requests to complete the administrative record, motions to supplement the record do not seek to establish that a part of the administrative record was omitted from the record presented to the reviewing court. *See Leavitt*, 545 F.3d 113. Instead, motions to supplement seek to establish circumstances warranting a departure from the "record rule," that "[g]enerally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." *Hoffman*, 132 F.3d at 14; *accord Leavitt*, 545 F.3d at 113 ("In the ordinary case, [courts] must uphold or set aside the agency's action on the grounds that the agency has articulated.").

"[D]eviation from the record rule . . . is limited." *Hoffman*, 132 F.3d at 15; *accord Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) ("We do not allow parties to supplement the record unless they can demonstrate unusual circumstances justifying a departure from this general rule."). Supplementation of the administrative record "may be appropriate" despite the record rule where "there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." *Hoffman*, 132 F.3d at 14. Supplementation may also be appropriate where supplementation of the record is "necessary" in order for the court "to resolve any statutory or constitutional contention that the agency did not, or cannot, decide." *Leavitt*, 545 F.3d at 113 (quoting *Ill. Council on Long Term Care*, 529 U.S. at 23–24) (alterations omitted).

The Second Circuit had the occasion to address a motion to supplement the administrative record on appeal from a decision by the Secretary pursuant to Section 405(g) in *Estate of Landers v. Leavitt*, 545 F.3d 98 (2d Cir. 2008). In *Leavitt*, as here, the plaintiffs raised statutory and constitutional challenges to the Secretary's determination, *id.* at 104, and sought to introduce materials that were purportedly relevant to the Secretary's determination, *id.* at 113. The Second

Circuit affirmed the exclusion of the materials because the administrative record certified by the Secretary sufficed to "shed light on the rationale for the agency's decision." *Id.* The court recognized that "[s]upplementation of the administrative record may be appropriate if 'there was such failure to explain administrative action as to frustrate judicial review'" of a statutory or constitutional challenge to the Secretary's determination, *id.* (quoting *Camp v. Pitts,* 411 U.S. 138, 142–43 (1973) (per curiam)), but concluded that the record certified by the Secretary "disclose[d] the factors that were considered and adequately explain[ed] its action," and therefore affirmed the district court's conclusion that the plaintiffs' "purely legal" challenges to the Secretary's determination did not require an assessment of the evidence that they sought to add to the record, *id.* (quotation omitted). The court explained that its decision not to supplement the record accorded with the "well-established" principle that "courts should focus exclusively on the formal administrative record unless that record is insufficient to shed light on the rationale for the agency's decision." *Id.*[2]

---

[2] Despite their differences, motions to complete and motions to supplement might both be attractive to a litigant seeking to add to the administrative record on appeal from an agency determination in a hearing held pursuant to Section 405(g). On one hand, while both motions are subject to demanding standards, the standard governing a motion to complete is generally considered to be less rigorous than the standard governing a motion to supplement. *See* Order at 31; *see also MedEnvios Healthcare, Inc. v. Becerra,* No. 23-cv-20068, 2023 WL 9692087, at *12 (S.D. Fla. Nov. 27, 2023), *aff'd sub nom. MedEnvios Healthcare, Inc. v. United States Dep't of Health & Hum. Servs.,* 2024 WL 551837 (S.D. Fla. Feb. 12, 2024) (observing that "supplementing the record is substantially more difficult to obtain than completing the record"); *Goose Creek Physical Med., LLC v. Becerra,* No. 22-cv-03932, 2024 WL 942918, at *5 n.7 (D.S.C. Mar. 5, 2024) (noting that motions to complete are not subject to "the same rigorous test" as are motions to supplement). On the other hand, the plain language in Section 405(g) provides for "a closed administrative record" to which "neither party may put any additional evidence before the district court." *Mathews v. Weber,* 423 U.S. 261, 270 (1976); *see* 42 U.S.C. § 405(g) ("The court shall have the power to enter, *upon the pleadings and transcript of the record,* a judgment affirming, modifying, or reversing the decision of the [Secretary] . . . ." (emphasis added)). Supplementation of the closed record may be the only avenue for a litigant to put additional evidence before the district court on a Medicare appeal. *See Yale-New Haven Hospital,* 470 F.3d at 81 (affirming grant of motion to strike materials that were not part of the record provided in Section 405(g) because they were "not admissible to supplement [the] record"). One of the circumstances where "[s]upplementation of the administrative record may be appropriate" on a Medicare appeal is where supplementation is "necessary" for the court to resolve claims like Plaintiff's, which assert "statutory or constitutional contention[s] that the agency did not, or cannot, decide." *Leavitt,* 545 F.3d at 113 (quoting *Ill. Council on Long Term Care,* 539 U.S. at 23–24) (alterations omitted).

The evolution of similar motions Plaintiff's attorney has brought in prior cases illustrates this point. In a separate action in the Western District of Tennessee, Plaintiff's attorney sought to add materials regarding zero-paid claims to the administrative record before the district court, *see Compass Lab. Servs. v. Becerra,* No. 22-cv-2770, Dkt. No. 36 at 1–2, 12–15 (W.D. Tenn. Jul. 24, 2023), and filed a motion to "supplement" the administrative record on the ground that

**B.  The Order Did Not Clearly Err or Misapply the Law in Denying Plaintiff's Motion to Complete the Administrative Record**

The Order did not abuse its discretion in denying Plaintiff's motion to complete the record because the administrative record before the Court is already complete.  The Order concluded that Section 405(g), rather than the APA, defines the administrative record in this case, and that Plaintiff has not demonstrated that the materials it seeks to add are part of the record as defined in Section 405(g).  Order at 16–22.  The Order also concluded that even if the APA defined the administrative record, Plaintiff has not demonstrated that the materials it seeks to add are part of the record as defined in the APA.  *Id.* at 22–30.  The Court finds no clear error or misapplication of law in either determination.

**i.  The Order's Denial of Plaintiff's Motion to Complete under Section 405(g) Did Not Clearly Err or Misapply the Law**

The Court sees no basis to modify or overturn the Order's conclusions that Section 405(g) defines the contents of the administrative record in this case and that Plaintiff has failed demonstrate that the record as defined in Section 405(g) is incomplete.

As the Order observed, a threshold question in determining whether to grant a motion to

---

supplementation was "necessary" to resolve the plaintiff's constitutional challenges to the Secretary's determination, *id.* at 4–12; *Compass*, No. 22-cv-2770, Dkt. No. 1 ¶¶ 256–98.  The motion was unsuccessful.  *Compass*, No. 22-cv-2770, Dkt. No. 45 at 9.  The court observed that the administrative record on an appeal pursuant to Section 405(g) is "closed," *id.* at 7 (quoting *Mathews*, 423 U.S. at 270), and determined that it was "'not in the position to consider new evidence in deciding whether to uphold, modify or reverse the ALJ's decision' affirming a denial of benefits" without remanding the case to the ALJ to take additional evidence, *id.* (quoting *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 839 (6th Cir. 2016)); *see* 42 U.S.C. § 405(g) (providing that the court "may at any time order additional evidence to be taken before the [Secretary]" under certain conditions).

Since the failure of his motion to supplement before the Western District of Tennessee, Plaintiff's attorney has styled his clients' motions to add zero-paid documents to the administrative record as motions to *complete* the administrative record, *see* Objections at 8 (arguing that Plaintiff "is only asking to *complete* the record" (emphasis in original)); *MedEnvios Healthcare, Inc. v. Becerra*, 23-cv-20068, Dkt. No. 32 at 1, 4–5 (S.D. Fla. Nov. 27, 2023); *Ashlie Healthcare, Inc. v. Becerra*, 23-cv-1443, Dkt. No. 27 at 1 (E.D. Cal. Aug. 21, 2024); *Goose Creek Physical Med., LLC v. Becerra*, 22-cv-3932, Dkt. No. 43 at 13–14 & n.8 (D.S.C. Mar. 5, 2024), while continuing to style their substantive challenges to determinations by the Secretary as constitutional due-process challenges rather than factual ones, *see* Complaint ¶¶ 249–84 (five causes of action, each alleging that the ALJ's determination violated Plaintiff's rights to due process).  This case is no exception.  As discussed, Plaintiff has invoked the Court's authority to *supplement* the administrative record as necessary to resolve its constitutional claims while maintaining that its motion should be evaluated as a motion to complete.  *See, e.g.*, Objections at 8–9.

"complete" the administrative record in a Medicare appeal is whether the contents of the record are defined by "42 U.S.C. § 405(g) or the [APA], 5 U.S.C. § 551, *et seq*." Order at 16. The Medicare Act "specifies 42 U.S.C. § 405(g) as the 'sole avenue for judicial review for all claims arising under the Medicare Act.'" *Yale-New Haven Hosp.*, 470 F.3d at 78 (quoting *Heckler v. Ringer*, 466 U.S. 602, 615 (1984)) (alterations omitted). Reviewing courts "therefore review the Secretary's actions pursuant to the specific provisions of § 405(g) where applicable." *Id.* On the other hand, "where no provision of § 405(g) is on point, [courts] apply the judicial review provisions of the APA." *Id.* The APA provides that a "[s]ubsequent statute may not be held to supersede or modify . . . [the APA] . . . except to the extent that it does so expressly." *Id.* (quoting 5 U.S.C. § 559) (alterations in original); *accord Dickinson v. Zurko*, 527 U.S. 150, 154 (1999) (explaining that "a reviewing court must apply the APA's court/agency review standards in the absence of an exception").

Section 405(g) expressly supersedes the APA's judicial-review provisions with respect to judicial review of any "findings of fact or decision of the [Secretary]," and expressly defines the contents of the "record" before the court upon review. 42 U.S.C. § 405(g); 42 U.S.C. § 405(h). Accordingly, Section 405(g), not the APA, defines the contents of the administrative record in this case. *See Yale-New Haven Hosp.*, 470 F.3d at 78. The Medicare Act provides for "judicial review of the Secretary's final decision after such hearing as is provided in section 405(g)." 42 U.S.C. § 1395ff(b)(1)(A).[3] By adopting the judicial-review provisions of Section 405(g), "[t]he Medicare Act also adopts an important limitation to judicial review in the form of the jurisdiction-stripping provision [in] 42 U.S.C. § 405(h)." *Retina Grp. of New England, P.C. v. Dynasty Healthcare*, LLC, 72 F.4th 488, 493 (2d Cir. 2023). Under Section 405(h), "[n]o findings of fact or decision of the

---

[3] Section 405(g) governs judicial review of determinations made by the Commissioner of Social Security, so the Medicare Act provides that "any reference to the 'Commissioner of Social Security' or the 'Social Security Administration' in [Section 405(g)] shall be considered a reference to the 'Secretary' or the 'Department of Health and Human Services,' respectively." 42 U.S.C. § 1395ff(b)(1)(A).

[Secretary] shall be reviewed by any person, tribunal, or governmental agency *except as herein provided*,"

and "[n]o action against the United States, the [Secretary], or any officer or employee thereof shall

be brought under section 1331 or 1346 of title 28 to recover on any claim arising under [the

Medicare Act]." 42 U.S.C. § 405(h) (emphasis added). "This means that § 405(g)"—not the APA—

"'is the sole avenue for judicial review for all claim[s] arising under the Medicare Act.'" *Retina Grp. of*

*New England*, 72 F.4th at 493 (quoting *Heckler*, 466 U.S. at 615) (alterations in original); *accord*

*Townsend v. Cochran*, 528 F. Supp. 3d 209, 215 (S.D.N.Y. 2021) (observing that "the APA standard

does not apply in Medicare appeals pursuant to 42 U.S.C. § 1395ff").

Section 405(g) provides an "on point" definition of what the administrative record is when a

court reviews a decision by the Secretary. *Yale-New Haven Hosp.*, 470 F.3d at 78. The default

"record" is the "closed administrative record" that the Secretary certifies to the Court when a party

seeks judicial review of the Secretary's determination. *See Mathews*, 423 U.S. at 270; *Fratellone v.*

*Sebelius*, No. 08-cv-3100 (RME) (RLE), 2009 WL 2971751, at *9 (S.D.N.Y. Sept. 16, 2009) ("The

ALJ's determination [pursuant to Section 405(g)] creates the entire and complete record of the

case."). Section 405(g) provides that, as part of the Secretary's "answer" to a party seeking judicial

review of its determination, the Secretary "shall file a certified copy of the transcript of the record

including the evidence upon which the findings and decision complained of are based." 42 U.S.C.

§ 405(g). The reviewing court makes its decision "upon the pleadings and the transcript of the

record" certified by the Secretary, and once the record is filed, additional evidence may only be taken

upon remand to the Secretary and "upon a showing that there is new evidence which is material and

that there is good cause for the failure to incorporate such evidence into the record in a prior

proceeding." *Id.*; *see Mathews*, 423 U.S. at 270 (explaining that Medicare appeals entail "a closed

administrative record . . . because under [Section 405(g)], neither party may put any additional

evidence before the district court"); *Leavitt*, 545 F.3d at 113 (observing that Section 405(g) provides

that "the district court ordinarily must base its judgment 'upon the pleadings and transcript of the record'" (quoting 42 U.S.C. § 405(g))). Because Section 405(g) expressly defines the administrative record in a Medicare appeal, the Court agrees with the Order that Section 405(g) governs the contents of the administrative record in this case, rather than the APA. *See Fratellone*, 2009 WL 2971751, at *9.[4]

The Court finds no clear error or misapplication of law in the Order's determination that Plaintiff has failed to demonstrate that the administrative record certified by the Secretary is incomplete. The Secretary's certification of the record to this Court is subject to a presumption of regularity, *e.g.*, *Sebelius*, 890 F. Supp. 2d at 309, which is not rebutted absent "clear evidence to the contrary," *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004). Plaintiff makes no attempt to rebut the presumption that the Secretary properly designated the administrative record in this case. To the contrary, Plaintiff concedes that Section 405(g) "addresses what constitutes the administrative record for purposes of the Secretary's findings of fact," and states that it "do[es] not challenge the factual findings of the ALJ." Objections at 8.

Plaintiff's objection to Judge Ricardo's conclusion is that he should have "completed" the administrative record pursuant to his authority to "develop an evidentiary record" as "necessary" to "resolve any statutory or constitutional contention that the agency does not, or cannot, decide." *Id.* at 9 (quoting *Ill. Council on Long Term Care*, 529 U.S. at 23–24). As discussed, the district court does

---

[4] The Order's determination that Section 405(g) applies in this case relied, in part, on the Second Circuit's affirmance in *Yale-New Haven Hospital* of the district court's decision to strike documents from the record that were not considered by the ALJ or the Medicare Appeals Council in the benefits proceeding below. Order at 20–21 (discussing *Yale-New Haven Hosp., Inc. v. Thompson*, 198 F. Supp. 2d 183 (D. Conn. 2002), *aff'd*, 470 F.3d 71). The Court is not as convinced as the Order and the parties that *Yale-New Haven* answers the question of whether Section 405(g) defines the contents of the administrative record on a Medicare appeal. There was no dispute in *Yale-New Haven Hospital* that the stricken documents were "not part of the administrative record before [the court] for purposes of [the] appeal," 198 F. Supp. 2d at 185, and the Second Circuit affirmed the district court's striking of the documents "on the ground that the [documents] are not admissible to *supplement* [the] record," 470 F.3d at 81 (emphasis added). The Second Circuit did not take a stance on whether Section 405(g) or the APA defined the administrative record, and affirmed the lower court's decision because there was no basis to supplement the record. As discussed, whether there is a basis to supplement the administrative record is a different question than whether the administrative record is complete.

have the power to add to the record where necessary to evaluate legal challenges to the Secretary's

decision, but that is a power to *supplement* the administrative record with additional evidence, *see*

*Leavitt*, 545 F.3d at 113—a power that is distinct from the district court's power to *complete* an

incomplete administrative record, *see Sebelius*, 890 F. Supp. 2d at 309 (distinguishing the standards

governing motions to add evidence considered by the agency decision-makers and motion to add

"extra-record" evidence).  To succeed on a motion to complete the administrative record, a party

must demonstrate that there is something missing from the record "considered by the agency

decision-makers."  *Id.*; *accord State of New York*, 1996 WL 87240, at *6.  In the context of a Medicare

appeal, that will require rebutting the presumption of regularity that attaches to the Secretary's

formal certification of the "record[,] including the evidence upon which the findings and decision

complained of are based."  42 USCA § 405(g); *see Leavitt*, 545 F.3d at 113.  The Order did not clearly

err in concluding that Plaintiff has not rebutted the presumption that the Secretary properly

designated the administrative record in this case, and accordingly, the Order properly denied

Plaintiff's motion to "complete" the record.[5]

----

[5] In 2017, CMS promulgated 42 C.F.R. § 405.1042(a)(2), which describes "the administrative record" in Medicare hearings held by the ALJ.  In full, the regulation provides:

> The record will include as marked as exhibits, the appealed determinations, and documents and other evidence used in making the appealed determinations and the ALJ's or attorney adjudicator's decision, including, but not limited to, claims, medical records, written statements, certificates, reports, affidavits, and any other evidence the ALJ or attorney adjudicator admits.  The record will also include any evidence excluded or not considered by the ALJ or attorney adjudicator, including, but not limited to, new evidence submitted by a provider or supplier, or beneficiary represented by a provider or supplier, for which no good cause was established, and duplicative evidence submitted by a party.

42 C.F.R. § 405.1042(a)(2).  Plaintiff argues, without citation to any case law, that this regulation supports Plaintiff's view that the administrative record encompasses materials not considered by the ALJ but considered by the UPIC and QIC contractors because it provides that the record includes, in addition to "evidence used in making the appealed determinations and the ALJ's or attorney adjudicator's decision," "any evidence excluded or not considered by the ALJ or attorney."  Objections at 15.  The Court disagrees.  Even assuming, as Defendant does, that this regulation may aid the Court in interpreting Section 405(g), multiple courts have concluded that 42 C.F.R. § 405.1042(a)(2) does not sweep farther than evidence that was actually proffered to the agency adjudicator.  *See Gaffney*, 995 F.3d at 747 (describing the regulation as including "any proffered evidence excluded by the adjudicator"); *MedEnvios*, 2024 WL 551837, at *4 ("The regulation does not contradict [the] view that documents that were never even part of the universe of evidence offered to the ALJ do not need to be included in the record for it to be considered complete.").  The first sentence in 42 C.F.R. § 405.1042(a)(2) provides that the record includes "evidence used in making the appealed determinations and the ALJ's

### ii. The Order's Determination that Plaintiff's Motion to Complete Would Fail even if the APA Governed the Scope of the Administrative Record Did Not Clearly Err or Misapply the Law

The Court also finds no abuse of discretion in the Order's determination that even if the APA defined the administrative record in this case, Plaintiff has still failed to demonstrate that the administrative record before the Court is incomplete.  Order at 22.  One of Plaintiff's objections to the Order is that under the APA, materials considered by the UPIC and QIC contractors, but not the ALJ, are part of the administrative record because the contractors are themselves "agency decision-maker[s]" whose decisions are reviewed by the Court on this Medicare appeal.  Objections at 14 (quoting *Sebelius*, 890 F. Supp. 2d at 309).[6]  In support, Plaintiff relies on 5 U.S.C. § 706, which provides, in relevant part, that in reviewing a determination by an agency, "the court shall review the whole record or those parts of it cited by a party . . . ."

Plaintiff's reliance on 5 U.S.C. Section 706 to define the administrative record on appeal from a Medicare determination is misplaced.  A body of caselaw has developed to determine what "the whole record" means in the case of "'informal' agency actions" where an agency does not compile a formal record "in the course of making [its] decision."  *New York v. United States Dep't of Com.*, 351 F. Supp. 3d 502, 631 (S.D.N.Y. 2019), *aff'd in part, rev'd in part on other grounds and remanded*

---

or attorney adjudicator's decision," including "any . . . evidence the ALJ or attorney adjudicator admits."  In context, the second sentence providing that the record "will also include any evidence excluded or not considered by the ALJ or attorney adjudicator" does not sweep beyond evidence proffered at the hearing but not admitted by the adjudicator.  *Id.*; *see MedEnvios*, 2024 WL 551837, at *4.  Moreover, as one court explained, it would make little sense to read 42 C.F.R. § 405.1042(a)(2) as creating an administrative record that "contain[s] every document created by an agency and its contractors at any point during the course of the matters on appeal, regardless of whether they were part of the record on which the final agency decision was made."  *MedEnvios*, 2024 WL 551837, at *4.  Medicare appeals are not an occasion for "a phishing expedition by the Plaintiff to uncover [the Secretary's] decision-making process or to ferret out how CMS exercises its discretion."  *Id.* (quoting *Arriva Med. LLC v. Sec'y of United States Dep't of Health & Hum. Servs.*, No. 19-cv-80685, 2020 WL 5757084, at *2 (S.D. Fla. Sept. 28, 2020)).

[6] Plaintiff also objects that under the APA, the Court must "complete" the administrative record pursuant to its authority to supplement the record before it as "necessary" to resolve Plaintiff's "constitutional contention" that the Secretary's decision must be overturned.  Objections at 16–17; *see Leavitt*, 545 F.3d at 113.  As discussed in Parts III.A and III.B.i, this argument improperly conflates the Court's authority to *complete* an administrative record that is incomplete and the Court's authority to *supplement* a record where necessary to evaluate a legal challenge to an agency's determination.  *See Sebelius*, 890 F. Supp. 2d at 309; *Leavitt*, 545 F.3d at 113.

*sub nom. Dep't of Com. v. New York*, 588 U.S. 752 (2019) (emphasis omitted); *see Overton Park*, 401 U.S. at 419–20.  But where an agency determination is made after formal proceedings "such as agency adjudication or notice-and-comment rulemaking," *United States Dep't of Com.*, 351 F. Supp. 3d at 631, the APA provides a precise definition of the administrative record in 5 U.S.C. § 556(e), *see* 32 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 8169 (2d ed.) ("Wright & Miller").

If the APA applied to this Medicare appeal, the applicable provision of the APA would be 5 U.S.C. § 556(e).  Section 556 "applies, according to the provisions thereof, to hearings required by section 553 or 554 of this title . . . ."  5 U.S.C. § 556(a).  Section 554 plainly encompasses the kind of determination appealed from in this case.  Section 554 applies, with certain irrelevant exceptions,[7] "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing."  5 U.S.C. § 554(a).  The Secretary's determination came after an adjudication required by the Medicare Act and Section 405(g) to be determined on the record after an agency hearing before an ALJ.  *See* 42 U.S.C. § 1395ff(d)(1) (providing that "an administrative law judge shall conduct and conclude a hearing on a decision of a qualified independent contractor . . . and render a decision on such hearing" within 90 days); 42 U.S.C. § 405(g) (requiring, in the case of an appeal to a district court, that the Secretary "file a certified copy of a transcript of the record").  It falls squarely within the ambit of Section 554.  *See United States Dep't of Com.*, 351 F. Supp. 3d at 631 (distinguishing caselaw defining "administrative record" for informal agency actions from formal actions "such as agency adjudication[s] and notice-and-comment rulemaking").

Section 556(e) defines "the exclusive record" in adjudications held pursuant to Section 554.

---

[7] There are six enumerated exceptions to Section 554.  They occur in adjudications involving "(1) a matter subject to a subsequent trial of the law and the facts de novo in a court; (2) the selection or tenure of an employee, except a[n] administrative law judge appointed under section 3105 of this title; (3) proceedings in which decisions rest solely on inspections, tests, or elections; (4) the conduct of military or foreign affairs functions; (5) cases in which an agency is acting as an agent for a court; or (6) the certification of worker representatives."  5 U.S.C. § 554(a).

5 U.S.C. § 556(e).  The definition plainly excludes materials that did not feature "in the [agency] proceeding":

> The transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, constitutes the exclusive record in accordance with section 557 of this title[8] . . . .  When an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary.

*Id.*  There is no dispute that the materials Plaintiff seeks to add in this case did not feature in the hearing before the ALJ.  *See* Objections at 14.  Because the materials Plaintiff seeks to add do not fall within the definition of the "exclusive record" in Section 556(e), the administrative record would not be incomplete without those materials if the APA applied.

Plaintiff's argument that the administrative record includes materials that the ALJ did not consider relies on an inapposite body of caselaw addressing "'informal' agency actions."  *United States Dep't of Com.*, 351 F. Supp. 3d at 631.[9]  The administrative record corresponding to an informal

---

[8] Section 557, in turn, "applies . . . when a hearing is required to be conducted in accordance with section 556 . . . ."  5 U.S.C. § 557(a).  Section 557(c) adds that the record must include the basis of the adjudicator's decision and the precise relief granted or denied:

> The record shall show the ruling on each finding, conclusion, or exception presented.  All decision, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of—
>
> > (A)  findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record; and
> > (B)  the appropriate rule, order, sanction, relief, or denial thereof.

5 U.S.C. § 557(c).  Plaintiff does not dispute that the record adequately sets forth the basis of the ALJ's determination and the relief denied for the purposes of Section 557(c).  *See* Objections at 9.

[9] *See* Objections at 15–16 (citing *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 36 (N.D. Tex. 1981) (finding that administrative record was incomplete because record certified by agency because the materials reviewed by "the final reviewing authority" in "the informal adjudicatory decision" before the court did not "constitute the whole record"); *Pension Benefit Guar. Corp. v. LTV Steel Corp.*, 119 F.R.D. 339, 342 (S.D.N.Y. 1988) (permitting "limited discovery to ensure that the administrative record before the court is complete" because, among other things, "the absence of both a formal agency proceeding and formal administrative findings suggests that some limited discovery will be useful to ensure that all matters considered by the [agency] are brought before this court")).  Plaintiff also cites to a case arising from a decision made pursuant to Section 405(g), *Abbott Radiology Assocs. v. Shalala*, No. 94-cv-390H, 1995 WL 853042 (W.D.N.Y. Nov. 15, 1995), but the *Abbott Radiology* court made clear that it was permitting discovery regarding the plaintiff's constitutional and statutory challenges to the Secretary's decisions, *id.* at *2, a determination that, as discussed, drew its authority from the court's power to *supplement* the record as necessary to resolve the plaintiff's "statutory [and] constitutional contention[s]," *Leavitt*, 545 F.3d at 113 (quotation omitted).  The *Abbott Radiology* court did not purport to be completing the administrative record before it.  *See* 1995 WL 853042, at *2.

agency action is defined differently than the record in a formal agency adjudication like the Secretary's in this case. As discussed, the Secretary's determination was the result of a "formal proceeding[]"—that is, a proceeding "run by decisionmakers who determine what information may be entered into a formal, closed record" and for which "the APA's statutory definition of record" is that provided Section 556(e). Wright & Miller § 8169; 5 U.S.C. § 556(e). In informal agency proceedings, by contrast, the agency does not "compile[] an administrative record in the course of making [its] decision," and there is no on-point provision in the APA that defines what that record is. *United States Dep't of Com.*, 351 F. Supp. 3d at 631 (quotations and emphasis omitted). In the absence of an on-point statute, a body of caselaw has developed to define what constitutes "the whole record" that a court considers in reviewing informal agency decisions. 5 U.S.C. § 706; *see, e.g.*, *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (explaining that, on review of an agency decision where "[t]here was no formal hearing before the ALJ," "[t]he whole administrative record . . . is not necessarily those documents that the agency has compiled and submitted as the administrative record" (emphasis and quotation omitted)); *see generally* Wright & Miller § 8391. The Supreme Court held in *Overton Park* that the "whole record" in an informal agency proceeding includes "the full administrative record that was before the [agency] at the time [it] made [its] decision." 401 U.S. at 419–20. Accordingly, the work of defining the administrative record on review of an informal agency action involves, among other things, determining who the relevant "agency decision-makers" were and what materials were actually "before" them. *Thompson*, 885 F.2d at 555 (quotation omitted); *accord Schicke v. Romney*, 474 F.2d 309, 314–15 (2d Cir. 1973) (explaining that "judicial review of informal agency action" requires a court to "have before it the full administrative record which was before the agency and on which the agency determination was based"). But that work is not so involved in the context of a formal proceeding like the agency adjudication performed by the Secretary below, because the APA defines what the "exclusive

record" is in formal proceedings. 5 U.S.C. § 556(e); *see* Wright & Miller § 8169. That definition excludes the materials Plaintiff seeks to add here.

Accordingly, Judge Ricardo reasonably concluded that even if the APA defined the contents of the administrative record before the court, Plaintiff has failed to demonstrate that the administrative record is incomplete. The Order did not clearly err or misapply the law in denying Plaintiff's motion to complete the administrative record.

## C. The Order Did Not Clearly Err or Misapply the Law in Determining that Supplementation of the Administrative Record Is Not Warranted

Finally, the Order did not abuse its discretion in determining that supplementation of the administrative record is not warranted in this case. Order at 31–32. Properly construed, Plaintiff's motion is one to supplement the administrative record certified by the Secretary with "extra-record" materials that did not feature in the hearing before the ALJ. *Sebelius*, 890 F. Supp. 2d at 309; *see* Dkt. Nos. 30, 31; *Leavitt*, 545 F.3d at 113. Supplementation of the administrative record is only appropriate in "limited" circumstances and upon a "strong showing" by the movant, *Hoffman*, 132 F.3d at 14–15; *accord Kempthorne*, 530 F.3d at 1002 ("We do not allow parties to supplement the record 'unless they can demonstrate unusual circumstances justifying a departure from this general rule.'" (quoting *Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991)), as in the ordinary case, a court reviewing a decision by the Secretary "must base its judgment 'upon the pleadings and transcript of the record,'" *Leavitt*, 545 F.3d at 113 (quoting 42 U.S.C. § 405(g)); *see also Mathews*, 423 U.S. at 263 (explaining that Section 405(g) precludes the parties from "put[ting] any additional evidence before the district court"). As discussed, one scenario where supplementation of the record may be appropriate is where supplementation is "necessary" for a court "to resolve any statutory or constitutional contention that the agency did not, or cannot, decide." *Leavitt*, 545 F.3d at 113 (quoting *Ill. Council on Long Term Care*, 529 U.S. at 23–24) (alterations omitted). Plaintiff's causes of action each allege violations of its constitutional rights to due process. Complaint ¶¶ 249–

84. Plaintiff argues that adding the zero-paid-claims documents to the administrative record is "necessary" for the Court's evaluation of Plaintiff's constitutional claims. Objections at 12 (citing *Ill. Council on Long Term Care*, 529 U.S. at 23–24).

      The Court disagrees. Plaintiff has not demonstrated that the materials it seeks to add to the record are "necessary" for the Court's evaluation of Plaintiff's "constitutional contentions." *Leavitt*, 545 F.3d at 113. Supplementation of the administrative record, accordingly, is unwarranted. *See id.*; *Ill. Council on Long Term Care*, 529 U.S. at 23–24. Plaintiff's due process claims challenge the Secretary's decisions not to include zero-paid claims in the universe of claims from which the sample of Plaintiff's overpayments was taken, Complaint ¶¶ 249–55, and not to provide documentation regarding the UPIC and QIC contractors' overpayment calculations, *id.* ¶¶ 266–84. *See* Objections at 13–14. Plaintiff makes no attempt to explain why it is necessary for the Court to review the documents themselves to evaluate whether the Secretary's decisions to exclude them comported with due process. *See Kempthorne*, 530 F.3d at 1002 (explaining that the burden is on the movant to demonstrate that supplementation is warranted). The Secretary described the documents that Plaintiff argues should have been included in the sample, and explained why it determined that zero-paid claims did not need to be included in the overpayment sample and why the Secretary was not required to provide Plaintiff with the specific documents it requested. *See* Complaint, Ex. 1 at 9–10 (ALJ's decision) (analyzing provisions of Medicare Program Integrity Manual and concluding that they did not require zero-paid claims to be included in the sample); *id.* at 11 (determining that Plaintiff was provided sufficient documentation to recreate the universe and sample). Plaintiff does not dispute the adequacy or accuracy of the Secretary's characterizations of the materials it seeks to add to the record. "It is well-established that courts should focus exclusively on the formal administrative record unless that record is insufficient to shed light on the rationale for the agency's decision." *Leavitt*, 545 F.3d at 113. Because Plaintiff has provided no indication that the materials it

seeks to add are necessary for the Court to assess the merits of Plaintiff's constitutional claims, the Court finds no clear error or misapplication of law in the Order's determination that supplementation of the administrative record is warranted in this case. *See, e.g.*, *id.*; *Kempthorne*, 530 F.3d at 1002.

## IV.    CONCLUSION

For these reasons, Plaintiff's objections to Judge Ricardo's January 15, 2025 Order are OVERRULED.  The Clerk of Court is respectfully directed to substitute Secretary Robert F. Kennedy, Jr. for Secretary Xavier Becerra as the defendant in this case and to update the docket accordingly.

SO ORDERED.

Dated:  July 25, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge